May it please the Court, Heather Mews for Appellant Joseph Carver. The summary judgment order in this case should be vacated because Mr. Carver had a clearly established liberty interest in early release to community custody. Now, this liberty interest is created by a Washington statutory scheme that has been repeatedly interpreted as requiring at least minimal due process. I want to draw the Court's attention to two provisions of the relevant provisions of the Washington Code. The first is 994A.710. Now, this provision uses mandatory language, and it talks about how sex offenders such as Mr. Carver should be sentenced. And it provides that these offenders are sentenced to a term of confinement in addition to a term of community placement. And that that term shall be three years or up until the period of earned early release credits that are awarded under Section 728, whichever is longer. Now, Section 728 is the provision which governs earned early release, and there's two aspects of this provision. The first aspect is the general provision that applies to prisoners who do not have community placement sentences. And it provides that those prisoners may have their sentences reduced by good time credits, good performance credits. The second part of this provision says that prisoners such as Mr. Carver who have a community placement requirement may earn early release or may be eligible for early release into community custody in lieu of their awarded good time, good performance credits. Now, the first part of the statute, there's absolutely no discretion in the statute. You earn the credits, you're released. The second part of the statute, Section 728, does have some discretion in it, but that discretion is not unfettered. It provides that the offender has to produce a release plan, and then that release plan is evaluated by the DOC and Mr. Layman for certain conditions. And basically, they're verifying that the release plan and the release address provided will not, for example, put the offender at risk of reoffending or violate a condition of sentence. And those are laid out in the statutory provision. Now, the Washington courts have interpreted Section 728 and the statutory scheme as providing for a liberty interest. In particular the State liberty interest is not. What's your response, counsel, to the fact that, I suppose in some respect, I ought to ask you, since it's an unpublished opinion, but under the new rules, who knows? Cheney v. Layman, one that was decided on March 22nd, held. And there are a number of Washington cases, these are district court cases, Pollack v. Layman, Duncan v. Layman, Eason v. Layman, Kistenmacher v. Layman, Tysonson v. Layman, and Garcia v. Layman. All of them 2006 cases held that no Federal liberty interest has been created because the DLC has discretion. What's your response to that? Well, Your Honor, I would submit that discretion doesn't mean that a liberty interest cannot be created. And that's most apparent in Greenholz itself, because Greenholz was a case where the parole board in that case had considerable discretion and similar criteria for whether or not to grant parole. And nonetheless, the Court in Greenholz acknowledged that a Federal liberty interest was created by that State scheme. In addition, you have here Washington courts that have interpreted the early release provision as creating a liberty interest, and not just the good time credits. Are you talking about Dutcher? I'm actually talking about earlier cases that occurred prior to the case here. And in particular, In re Anderson, which is a Supreme Court, Washington Supreme Court case, and in re Crowder, which is a Washington court of appeals case. Anderson dealt with the first part of the statute and said there is a liberty interest if you take away good time credits. Now, Crowder dealt precisely with the second part of the statute, which is early release to community custody. Crowder, like Mr. Carver, was a sex offender and was subject to a community placement term. And he argued that a liberty interest was created by that statute. The Court agreed. It found in the case that the due process provided was adequate. I'm going to have to shortcut this a little bit. I assume you would say about those related district court cases that that's why we have a court of appeals, that district court here had made the same error, is what you would tell us. Absolutely. But that's not an answer to the first half of Judge Smith's question, which is what do you do about a decision by our court, not published, true. Other than that, what do you do about it? Now, you said in your letter that it's not a holding, but that's a highly debatable reading of that opinion or that disposition. Your Honor, I submit that the court expressly says that it goes through some of the analysis and the defaults, and I agree. It suggests that there may not be a liberty interest created. It then goes on in its conclusion to say, regardless, even if we assume there's a liberty interest here and then does a further analysis. Right. But that doesn't change the fact they say there is no liberty interest, and then they say, but even if there were, then you still lose. That's an alternative holding. It's not, I don't know whether you're suggesting it makes the first holding dictative, but. I think it is dictative, but regardless. But you don't believe in alternative holdings. I think the court found that it assumed that there was a liberty interest, and that's the holding of that case. Now, they said, if we assume, first they made their holding, and then they said, but even if we assumed the opposite. So I think you have a problem with that case, although the case isn't yet final. Well, it's a non-presidential case, so it's not binding on this panel. Well, what would you think would be a good idea for this Court to have an unpublished decision that held the statute, gave no liberty interest, and then a published decision that said it did? I don't agree. I agree that that's probably not the best practice, but in reality, I think you can read Cheney as not holding that, as really resting on this different analysis of whether or not due process was violated. But in addition, the opinion in Cheney does not consider the mandatory language of Section 710. It is solely looking at Section 728. It also doesn't consider how the Washington courts have parsed the some of the permissive language in Section 728, and they found that that permissive language means that there's no liberty interest in earning good time credits, but there is a liberty interest in having them taken away. And that's what happened in this case, where effectively sex offenders such as Mr. Cheney and Ms. McCarver categorically are excluded from earning early release to community custody because of their status for possible civil commitment. Now, I started to mention Enright Crowder. This case was directly on point with respect to whether or not a liberty interest was created, and so we submit that it was a clearly established interest. Crowder's – the facts of Crowder were somewhat different in that the defendant in that case was a – the court found that there was due process provided because the plan was investigated and rejected for a legitimate reason. What we have in this case is a policy implemented by Mr. Layman and through the DOC whereby all release plans for sex offenders potentially meeting the definition under a separate statute for civil commitment were denied their release plans, which we submit is not a legitimate reason. It's not one of the reasons that are – that is listed in Section 994A728, which creates some limits to the discretion of the DOC. In effect, the DOC's policy was we don't investigate these plans, we don't apply the criteria at all, we just deny them out of hand. This is even more extreme because what was actually happening was not that these – these prisoners were immediately being referred for civil commitment. They actually would hold the referral right up into the maximum release date, refer them at that point, and so you effectively have no opportunity even to get a termination on the civil commitment until after the earned release credits are taken away. Is it your position that 9.94A728, I guess it's 2AD, that's where the department may deny the transfer community custody status, is it your position that even though there is a lot of discretion there, that by virtue of the way this is written, that if all of the conditions are absent, that there is no discretion? The expectation in the statute, the way it's written, is it may deny if any of these four conditions are present. Right. So we submit that the assumption is if those four conditions are not present, then the plan is to be granted. So it's kind of a negative pregnant concept. It's certainly different and distinguishable from some of the cases that talk about language where you may grant parole and do not put do not list the circumstances under which you may deny. You would read it as if it said may only deny transfer if. That's your construction. Essentially, Your Honor. Yeah. Which means you're required to grant it if they're all met. That is true. And what's pointed in this case is one of the relevant criteria under the civil commitment statute talks about the risk of reoffending. And when that is related to one of the criteria under the statute that's listed, whether or not the release address would put the offender at risk of reoffending, but the what investigation was done by the DOC, they actually concluded that the proposed residence does not place the offender at risk to reoffend, and then denied the plan anyways because Mr. Carver had been referred for civil commitment. Now, the Dutcher decision came out shortly after Mr. Carver's plan was denied. It was about six months after, and clearly found that the practice of the DOC and Mr. Lehman of refusing to investigate plans with civil commitment referrals was improper. And it found not just under the Washington statute that the DOC had failed to follow the Washington statute. It found that there was a liberty interest, and regardless of whether or not the DOC plan actually complied with the statute, that what they were doing violated that liberty interest. But all Dutcher said, isn't it, was that the DOC had an obligation to consider all release plans and then to determine eligibility on the merits, and presumably referring back to 728. Is that your understanding? That is the case. And here we have with Mr. Carver, there was no determination on the merits. Essentially, they didn't consider the criteria. They just found he was a civil referral case, and therefore, he was out of the system. And we would argue that due process at minimum requires that you make a decision on the merits and go through the statutory criteria and not reject a plan for a ground that's not in the statute. So in effect, you're saying that Dutcher really covers your case. You don't really need our help, other than to say this guy didn't get the Dutcher rights. Well, we would certainly say Dutcher covers our case. It did come out six months later. And so in terms of the Mr. Layman's arguments, he argues that he's entitled to qualified immunity because Dutcher came out after the relevant decision in this case. And we'd argue that under the precedence of Anderson and Crowder, that this was a clearly established liberty interest, and that a reasonable person in Mr. Layman's position would understand that due process at minimum requires that you make a merits decision. So what are you asking of us? We're asking for vacating the summary judgment ruling in this case that found that Mr. Layman was entitled to qualified immunity and found that there was no liberty interest in this case. So your interest, you're going after Mr. Layman. That's correct. I'll reserve my time. Thank you. Good morning, Your Honors. May it please the Court. My name is Sarah Olson. I'm an Assistant Attorney General from the State of Washington, here representing the appellees, including Mr. Layman, who was the former Secretary of the Washington State Department of Corrections. The appellees request that this Court affirm the lower court's ruling that clearly established law did not require that Mr. Carver be transferred to community custody in January of 2003. My learning colleague is accurate in citing to RCW 994A728 and its sub-provisions. Unfortunately, she failed to mention the primary provision of that statute, which is mandatory language that says Washington law requires that DOC keep offenders in confinement until the expiration of the sentence. That language is mandatory language. The Department shall keep offenders in confinement until the expiration of their sentence. The statute then goes on to use permissive language to establish the discretion of the Department in determining whether or not an offender can be released in lieu of earned early release credits. The analysis in this case begins with the Supreme Court statement in Greenholst that an offender ---- Nothing else they can do. No, but the presumption ---- The shall doesn't really mean what shall usually means. It means that the presumption is that an offender who is incarcerated pursuant to Washington law will remain in custody until the completion of his sentence. Except? Except there are areas where an inmate may be released. It's permissive language, not mandatory language, which distinguishes it from the statute in Greenholst and Allen where they were considering statutes that required that a parole board release someone when they had reached their date unless specific criteria were met that required that that person remain in confinement. No portion of 9948728 creates a legitimate expectation that an inmate will be released on their earned early release date. What is your response to the construction that your opposing counsel puts on 728? And I'll forget the interims and just say it's sub D. Specifically that while the DLC has discretion, as long as it can cite any of the four subparts, if none of those subparts are there, in fact, the negative prejudice is that they must grant release. I would say that that's an inaccurate reading of the statute. There are specific criteria that are outlined in subparagraph D. Subparagraph C also gives the Department of Corrections the authority to draft a policy governing how a release plan is submitted and what is considered in granting or denying a release plan. In addition to that, RCW 9948710 establishes two additional criteria in which an offender who is a sex offender cannot be released. So there are criteria that are in 9948728 subparagraph D, but there are additional statutory criteria as well as the discretion that was mentioned. What are the sections that also limit release? In 9948710. 710, it says. What are the subsections? I've got a portion of 710 here, but that does not talk about. You said I think there are two other reasons why they must deny. And I apologize. I don't have 710 in front of me. But my recollection of what 710 says is if a person is at a substantial likelihood to reoffend, they cannot be released. And I can't remember what the second one is off the top of my head, but I can certainly provide that information to the court. So you're representing to the court that in 710 at some point that you'll presumably provide to us in a 28J letter, there are other mandates under Washington law that say that notwithstanding the language of 728 sub D, that you will not release this person if these various criteria are met. Is that correct? That's correct, Your Honor.  And what do you make of Dutcher? I'm sorry? What is your comment on Dutcher? My comment on Dutcher is that the Washington State Court of Appeals established a procedure, a right to procedure. And a right to procedure is not an establishment of a substantive right under the 14th Amendment. The Dutcher Court did not address the 14th Amendment. It conducted no analysis of a liberty interest. It simply stated based on previous court rulings in the State of Washington that a limited liberty interest had been created at some point in the past and followed that line of thinking. And, again, it created a procedure that the Department of Corrections needed to follow and established that Mr. Dutcher had the right to that procedure. It did not establish that he had a 14th Amendment right, a 14th Amendment liberty interest. No. I'm really not concerned at the moment about whether it's a 14th Amendment liberty interest. What the proper interpretation of the Washington statute is, and your suggestion is that there's no obligation to do anything regardless of whether those four factors are met or not. But the Washington court says that you do have to conduct those procedures. And then what? I'm suggesting that RCW 9948728, subparagraph C, gives the Department of Corrections the authority to establish a policy which dictates how the procedure will work and how the offenders can apply for a release address and how the Department will consider that. In compliance with that, they drafted a policy. And part of that policy contained the language that if you were being, if you were considered eligible for civil commitment referral, your plan will not be considered. And that was the status of the policy and the law at the time that Mr. Carver submitted his release address. His release address was, therefore, denied. He was informed of that a month later. And then eight months later, the Court issued its ruling in Dutcher informing the Department of Corrections that that exercise of discretion was inappropriate. At the time of Mr. Carver's submission, the status of the law and the status of the policy allowed the Department to do that. When it was challenged, it changed, obviously. Mr. Carver had the ---- Kennedy, this was not really the status of the law. I mean, Washington attorney general had an incorrect view of the law as of that time. The law didn't change. The Court explained to Washington officials that they were wrong in their view of the law. The legislature gave the Department of Corrections the discretion to establish this policy. They did so. And then the Court placed limits on that discretion at a later date. Mr. Carver had the opportunity to ---- Well, the limits were always there. This may be a philosophical discussion, but the limits were there. You just didn't recognize them. And the Court said that you were wrong in your construction of the statute. That's accurate, Your Honor. I wonder if we could focus on a slightly different issue. If we assume arguendo that there is a state-created liberty interest, you get to the question of whether Mr. Lehman is entitled to qualified immunity. Would you articulate from the perspective of the state why you believe Mr. Lehman, under the circumstances we've postulated here, is entitled to qualified immunity? Yes, I certainly can. There are three bases in the state's position for why he is entitled to qualified immunity. The first is, as we were discussing just a moment ago in our philosophical question, is that the status of the policy and the Department of Corrections interpretation of the policy, as they were permitted to do by the legislature, said that this was an appropriate reason for denying a release plan. That changed, but it didn't change until eight months after Mr. Carver's release plan had been denied. At the time that his plan was denied, that was the state of the clearly established law. And to follow up on Judge Reinhart's intimation here, even though Dutcher was decided thereafter, was the situation such that Mr. Lehman, being I'm sure the intelligent person that he is, he could not have divined what the law really was? Is that an accurate statement? I think that is an accurate statement. And the reason why I think that's an accurate statement is because we look to what's happened recently. And we do have the decision from the Cheney Court. And even the Cheney Court articulated that this is not a clearly established area of the law. If it's not a clearly established area of the law in the opinion of Ninth Circuit justices, how could it be something that Mr. Lehman should have known? How could it have been clearly established to him? And in addition to that, as Your Honor cited, there are numerous district court cases in the state of Washington where the courts have consistently held that this is an area of the law that is not clearly established, that there's not a state that has created liberty interest, and that Mr. Lehman is entitled to qualified  Kennedy. Are those cases before or after Mr. Lehman made his decision? They were after he made his decision. It's been since. So if they were appealed to us, we'd have the same issue we now have. That's correct, Your Honor. So they don't really prove very much. But there is the question of the outstanding panel disposition, which you have brought to our attention in the 28J letter, and which is still not a final disposition. Yes, Your Honor. Maybe light will come to the panel, and they will decide, oh, it all was perfectly clear, and they are. Washington officials are not entitled to qualified amendment. If that light comes to them before the decision becomes final, I guess then we'll all know it was perfectly clear. Yes, we will at that point. That's the first prong of the qualified amendment. Your position is that the law at the time was sufficiently unclear or unknown that Mr. Lehman could not have been expected to understand what we now know since Dutcher's come out and some of the other cases. Yes, Your Honor. So what are the other arguments that you have, if there are any, that he's entitled to qualified immunity? I guess I misspoke. I guess that is my primary argument, that he is entitled to qualified immunity. Okay. And, again, I want to get back for a moment to the liberty interest issue, because you've asked me to assume arguendo that there is a State-created liberty interest, and it is clearly the State's position that there is not a limited liberty interest in this. Despite Dutcher. Despite Dutcher. Dutcher created a procedure. And, in fact, Mr. Carver is here today asking that a procedure should have been followed. And asking for a procedure to be followed is not the same as creating a substantive due process right. And, again, the court in Greenholz determined that if a language is mandatory, it creates a State-created liberty interest. And the language in Greenholz and Allen were statutes that said, generally, that a board shall set a release date. A board shall release an offender if they don't meet these criteria. Washington simply doesn't have that. We actually have the opposite. We have a statute that says you shall not release somebody, but you may in your discretion establish a program for releasing somebody if they meet some criteria that are established both in the statute and in the policy. It grants an extreme amount or a significant amount of discretion to the Department of Corrections to make that ruling. And that's what was done in this case. And, unfortunately, we found out eight months later, or fortunately, we found out eight months later that the interpretation, the policy that had been drafted by the department, was not consistent with what the legislature had intended. Kennedy. Well, let me ask you another thing. Again, assuming, as Judge Flint suggests, that there is a constitutional violation, and that you learned at the time of Dutcher that your view of the statute was wrong, isn't there still then a continuing violation from the time of Dutcher to now as to which you might have had adequate notice? In Mr. Carver's case, Mr. Carver had the ability to submit another release address at any point. He could have, in fact, submitted the same release address at any point, and he made a decision not to do that. RCW 9948728, subparagraph 2, places the onus on the offender to submit a release plan to the department. And Mr. Carver simply did not do that. He was notified a month after he submitted his original address in March of 2002 that his address was being denied. He was notified of the basis for that denial, that the policy said, because you're going to be civilly committed, we're not going to consider your plan. At any time, the policy was then amended when the Dutcher decision came out. That policy was published to all offenders. Mr. Carver could have submitted another address, and he didn't. So all offenders were given notice of the change in policy? The policy is published at every institution in the State of Washington, as well as the Department of Headquarters. Was the change published at every institution? There's a copy in the law library, and they're posted when changes are made. They're posted in common areas within the institution. Or was it sent to Mr. Carver himself? It was not sent to Mr. Carver himself. And there was simply no provision in Dutcher that would have given the Department notice that they needed to notify everybody whose plan had been denied that they could now resubmit a plan. But the bottom line is that, you know, as a typical individual, he would not necessarily really know about Dutcher. I would dispute that, because he did know enough to look at the policy the first time to generate a plan, and he did know enough about Dutcher to file this civil action where he cited Dutcher extensively in his complaint. So at some point he learned, or he was capable as a typical person of figuring out what Dutcher was. And at the time he filed his complaint in this case, he was acting pro se. So at some point he did become aware. You're not arguing he's waived that? He's waived. That he's waived anything by failing to have filed after that point? It was argued in the district court. It was not ruled on in the district court's report and recommendation and subsequent order. You didn't include that in your briefing? It was not raised in the briefing, no. If there are no further questions, this the appellant's request that the Court affirm the lower court's ruling, finding both that there is not a limited liberty interest and that qualified immunity applies to Mr. Layman. Thank you, counsel. Thank you.  I believe there is, counsel, did refer to another section of the provision which does lay out two additional criteria applicable to sex offenders having to do with not placing a sex offender in the same address, in the same address as the victim. We think these are also part of the discretion of the DOC to deny release plans, also not grounds for denying Mr. Carver's release plan in this case. Do you happen to remember those? These are part of 710, I think she suggested. Do you happen to remember what they are? Yes, 710 or 720. I don't recall specifically. I was looking for the language. But these are the same things you're talking about, right? Yes. So there are two additional criteria that would have been applicable that gave discretion to the DOC to deny Mr. Carver's plan, which were not used and not applied in this case. But the bottom line is that that means that the universe of 728 is not entire. There's some other parts that are not included there. So you can't really do a negative pregnant on 728, right? Well, I think reading the statutory scheme together, you can. And there is mandatory language in, I'm now mixing my numbers, 710 or 720, which I referred to initially, which talks, in mandatory terms, talks about how to sentence the term of sentence for community placement in mandatory language, which says you shall be sentenced to a term which includes this term of earned release time that you've earned as a part of Section 728. So it's not entirely just permissive, and you have to read these provisions together to determine whether or not there is a State-created right. Moreover, this analysis ignores the State, Supreme Court, and appellate court decisions which find that there is such a right created. In Greenholz, the Court specifically notes how useful it would have been if the Nebraska courts in those cases had ruled on and interpreted the relevant statutes to determine whether or not they were permissive. So this is at least relevant. The Washington courts' determinations are at least relevant in assessing whether or not there is a State-created liberty interest in these statutes. And prior to the decision in Mr. Carver's case, those courts were uniform in finding a State-created liberty interest despite the language that counsel points to. And since, arguably, Dutcher recognized a State-created liberty interest, define for us, if you will, counsel, what that State-created liberty interest gives to Mr. Carver. What rights, if any, does it give to him, other than the procedure that was mentioned by your opposing counsel? Well, we think the liberty interest is the interest in being released to community custody. Now, the procedural rights as a result of that that follow are at least having a decision on the merits, and at least having a decision that is the legitimate reason that's provided for in the statute. So I think the district court in this case misconstrues the right at issue as a procedural right by just focusing on whether or not Mr. Carver had a right to have his plan investigated or a right to have a hearing. I agree those are procedural, but that is the due process that's required because there's a substantive liberty interest. So you're saying that the right is to not only have a hearing, but to have a disposition and reasons given for the disposition. Essentially. I mean, what we have here is just a nondisposition, a refusal to decide on the merits that are provided for in the statute. Is it your contention that Dutcher actually takes care of this, though? That, I mean, if Dutcher had been on the books before Mr. Carver's procedure began, is it your view that the D.L.C. would have been required to do what you're looking for here? We believe so. In fact, I think that's indicated by the investigation that was done, where the investigation found that the release address provided by Mr. Carver did not put him at a risk of reoffending, which is one of the primary criteria under the statutory provisions, and the relevant criteria for the civil commitment determination. So you have essentially opposite findings where, on the one hand, the DOC is saying, well, he may be meet the definition for civil commitment, which involves a risk of reoffending, but then finding his release address does not put him at a risk of reoffending. Are we in a situation here where you have the state of Washington, its courts have construed state law and determined that there is a state liberty interest? If you take away the federal component that you're arguing for, is this something where we ought not to be involved? Is this something where Washington really has its own answer, that no federal substantive due process or liberty interest need be involved? Well, I submit that the liberty interest identified by the State courts is a Federal due process interest. So you're – from your perspective, if there's a State-created liberty interest here, there's a Federal one, too, and you want that declared? Yes. One additional point on whether or not the policy was clearly established here, the liberty interest and the minimal due process rights were clearly established under Washington law. A reasonable person in Mr. Layman's position should have been aware of that. And we submit that Mr. Layman was aware of that and nonetheless implemented his policy and was shot down not just once in Dutcher, but then the subsequent policy that was implemented was also shot down as improper. And so this is – But let's ask you that. Let's assume we were to conclude that there was no – it wasn't clear. It was clearly established before Dutcher. Counsel says that after Dutcher, it was your client's obligation to file another application and that posting the notice of the change in rules gave him notice. What's your answer to that? The subsequent policy that was later also shot down, I believe, would have also meant his release plan couldn't have been approved. We would submit that it – the government also had an obligation to help Mr. Carver submit his application that's provided for in the statute. It is not the government's sole – the DOC's, rather, sole responsibility to find a release address that's established in Crowder, but it does have an obligation to assist Mr. Carver, which we would submit was not fulfilled. You're saying the subsequent policy wasn't valid? Yeah, that was – Is it now a valid policy? It is invalid under NRA Lip Trap. It's – the subsequent policy created a delay in early release for offenders like Mr. Carver for forensic examination for civil commitment. Is it now a valid policy? I actually – I believe that a new policy has been implemented, but I'm not familiar with its terms. Has he been released? Has he – he is actually still held in civil commitment. Civil commitment? Yes. So he was released to his maximum release date in 2003. He was tried finally last September. He was declared not to meet the standard for civil commitment. There was a mistrial found, and that is currently under review. So he is still in – in custody. How long is the civil commitment? The civil commitment is indeterminate. It's re-reviewed every six months, but he's being held for trial and appeal at this point. Is there an action involving that? I do not believe – there is an appeal that he is pursuing in connection with the trial on the civil commitment proceeding. Okay. Thank you. Thank you. The case is arguably submitted. The Court will take a brief recess before the final case of the morning. If I don't like it, congratulations to both of you for fine argument. All rise. Thank you. This Court stands in recess for five minutes.
judges: Ferguson, Reinhardt, M. Smith